Merrimack
No. 82-098

### The State of New Hampshire

v.

### Warren W. Bushey

December 8, 1982

*Gregory H. Smith*, attorney general (*Peter W. Mosseau*, assistant attorney general, on the brief), by brief for the State.

*James E. Duggan*, appellate defender, of Concord, by brief for the defendant.

KING, C.J. The sole issue presented by this appeal is whether the State proved beyond a reasonable doubt that the defendant, Warren W. Bushey, knowingly and intelligently waived his *Miranda* rights before making a statement to the police. Holding that the State failed to meet its burden, we reverse his conviction and remand for a new trial.

The defendant was arrested on the evening of June 21, 1981, and charged with the aggravated-felonious-sexual assault of a thirteen-year-old girl. On the way to the Pittsfield Police Station, a police officer read him the *Miranda* warnings. After arriving at the station, he was again advised of his *Miranda* rights by Deputy Police Chief Greenwood. Greenwood testified that it took forty-five minutes to explain these rights, line by line, to the defendant. When the defendant indicated that he was willing to talk to the police, Greenwood called Lieutenant Shackford of the Merrimack County Sheriff's Department to take the defendant's statement. Lieutenant Shackford again advised the defendant of his *Miranda* rights. When the defendant asked questions about some of the words used in the warnings, Shackford explained each right to the defendant.

The defendant stated that he understood his rights and initialed a form which listed the *Miranda* rights. He agreed to make a statement and to have the statement taped by the police. When the taping began, the defendant was again advised of his *Miranda* rights. Lieutenant Shackford once more explained the rights to the defendant, and attempted to determine if the defendant understood the rights by having him explain the rights in his own words. Shackford attempted to explain the concept of waiver to the defendant. The following is an excerpt from the transcript of the defendant's statement:

"Q. [Shackford] Okay, very good, and now we get down to the waiver, do you understand each of these rights?

A. [Defendant] Yea.

Q. Now do you understand what it means to waive your rights, give them up, do you understand what that means?

A. Yea.

Q. Okay, what does it mean?

A. Means you can give up and don't have to say no more.

Q. Well let me explain exactly what waiver means, it means that you have all these rights, okay, as a citizen under your Constitution, we talked about the 5 different rights that you have under the Miranda, now to waive these rights means to give them up, do you understand that?

A. Yea, I don't have to say no more.

Q. Well that's part of it, but it means also that you can give them up, do you understand that?

A. What do you mean give them up?

Q. That you can talk to us if you want to or you don't have to, you understand that?

A. Yea.

Q. Completely?

A. Yea.

Q. Is there any question at all, you understand what it means to give up your rights,

that you can talk to us or you don't have to talk to us?

A. Okay.

Q. All right?

A. Yea.

Q. Is there any question in your mind about what it means to waive your rights?

A. It means I don't have to say anything.

Q. If you want to?

A. Unless I want to.

Q. And having these rights in mind, are you willing to talk to us?

A. I guess so.

Q. But is this done freely without any threats or promises?

A. Yes.

Q. So you understand what it means to give up your rights and can we proceed with this at this time?

A. Yea."

In a hearing on the defendant's motion to suppress his statement, both Greenwood and Shackford testified that they believed the defendant had understood his *Miranda* rights and had validly waived them. The defendant conceded on cross-examination that he had understood some of the rights, but that he did not know what might happen if he made a statement to the police. An expert witness, the head of the testing division of an educational testing center, testified on behalf of the defendant that the defendant has a performance I.Q. of sixty-six, a verbal I.Q. of seventy. The expert witness also testified that the defendant was unable to read, and that he had severe problems comprehending material presented orally. Finally, the witness stated that the defendant was unable to understand the written or oral explanation of his *Miranda* rights and that the defendant did not understand the concept of waiving his rights.

The Superior Court (*Johnson,* J.) held that the defendant had knowingly and intelligently waived his *Miranda* rights. After a

trial, the defendant was convicted of aggravated-felonious-sexual assault. He appeals the denial of his motion to suppress.

 A defendant may waive his *Miranda* rights provided the waiver is made knowingly and intelligently. *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). The State has the burden of proving beyond a reasonable doubt that the defendant knowingly and intelligently waived his *Miranda* rights. *State v. Gullick*, 118 N.H. 912, 915, 396 A.2d 554, 555 (1978); *State v. Phinney*, 117 N.H. 145, 146, 370 A.2d 1153, 1153 (1977). We agree with the State that there is no *per se* rule that a person with low intelligence cannot waive his *Miranda* rights. Rather, the determination of whether a person in fact knowingly and intelligently waived his *Miranda* rights is to be made after considering the totality of the circumstances. *North Carolina v. Butler*, 441 U.S. 369, 374–75 (1979). One factor which should be considered is the mental capability of the defendant. *State v. Noel*, 119 N.H. 522, 526, 404 A.2d 290, 292 (1979).

 The requirement of a knowing and intelligent waiver implies a rational choice based upon some appreciation of the consequences of the decision. *Cooper v. Griffin*, 455 F.2d 1142, 1146 (5th Cir. 1972); *see State v. Holderness*, 301 N.W.2d 733, 739 (Iowa 1981); *State v. Thompson*, 287 N.C. 303, 318, 214 S.E.2d 742, 752 (1975), *modified on other grounds*, 428 U.S. 908 (1976). After reviewing the record, viewing the evidence in the light most favorable to the State, *State v. Goddard*, 122 N.H. 471, 473, 446 A.2d 456, 457 (1982), we hold that a reasonable doubt exists as to whether the defendant knowingly and intelligently waived his *Miranda* rights.

We have reviewed the transcript of the defendant's statement. The transcript indicates that the police explained carefully the *Miranda* rights to the defendant. We agree that the defendant appeared to understand some of his rights. But it also appears that the defendant did not understand the concept of waiving his *Miranda* rights. Although the defendant stated that he understood the concept of waiver, at no point during the discussion of waiving his *Miranda* rights did the defendant accurately explain the concept. While an explanation of *Miranda* rights by a defendant is not ordinarily necessary for a knowing and intelligent waiver to occur, the lack of such an explanation is significant in this case.

Throughout most of the discussion, the defendant gave an inaccurate description of what constituted a waiver. Although he ultimately was able to state that waiver meant that he did not have to say anything "unless I want to," this was only on the prompting of Lieutenant Shackford. There is no evidence in the transcript that the defendant made a choice to waive his rights after considering

the consequences of a waiver. Indicative of the defendant's failure to consider the consequences of his statement is the defendant's response to the question, "Did you know that [the victim] was 13 years of age?" The defendant answered, "No, I thought she was 12 . . . ."

In addition to the transcript, there was expert testimony that the defendant could not read and that he did not understand the *Miranda* warnings. The State introduced no expert testimony which indicated that the defendant did understand his rights. The testimony of the two police officers that the defendant understood his rights was based on the conversation for which we have a transcript. Our reading of the same transcript indicates that the defendant did not knowingly and intelligently waive his *Miranda* rights.

██ ██ For the foregoing reasons, we hold that the defendant did not knowingly and intelligently waive his *Miranda* rights, and that the defendant's statement was improperly admitted during trial. The burden of establishing that error in a criminal proceeding is harmless beyond a reasonable doubt rests on the State. *State v. Scarlett*, 118 N.H. 904, 907, 395 A.2d 1244, 1246 (1978). The State has failed to prove that the admission of the defendant's statement constituted harmless error.

*Reversed and remanded.*

All concurred.